CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

July 10, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DEAN BLAKENEY,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:24-cv-00413** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **HAROLD W. CLARKE, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

### MEMORANDUM OPINION

Dean Blakeney, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. Blakeney claims that he was subjected to unconstitutional conditions of confinement at River North Correctional Center (RNCC). The remaining defendants, Lt. R. Hickman and Major Williams, have moved for summary judgment on the ground that Blakeney failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Blakeney has not responded to the motion, and the time for doing so has expired.[1] For the reasons set forth below, the motion for summary judgment, ECF No. 27, is **GRANTED**.

### I.    Background

#### A.    Summary of Blakeney's Claims

According to the verified complaint, Blakeney was previously incarcerated at Nottoway Correctional Center, where he has placed in segregation for using drugs. Compl., ECF No. 1, ¶ 9. On August 22, 2023, Blakeney was rushed to the hospital after being found

---

[1] The Clerk previously advised the parties that the court would decide the matter without further notice if no response was timely filed. ECF No. 29.

unresponsive in his cell. Id. Although a nurse informed defendant Williams that Blakeney did not have drugs in his system, Williams did not share this information when Blakeney was discharged from the hospital. Id. ¶ 16.

After being discharged, Blakeney was transferred to RNCC and placed in a dry cell. Id. ¶ 10. Blakeney alleges that defendant Hickman kept him in the dry cell for 23 days, even though no drugs were found in his system. Id. ¶ 10. During the 23-day period, Blakeney was not permitted to shower or brush his teeth. Id. His toilet was not flushed for 10 days, and he was forced to eat his food while inhaling the smell of urine and feces. Id.

**B.      Evidence Relevant to Exhaustion**

**1.      The Applicable Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Sutfin Aff., ECF No. 28-3, ¶ 4. Grievable issues include actions of staff that affect an inmate personally. OP 866.1 § III(B)(1) (eff. Jan. 1, 2021, amended Apr. 1, 2023), Sutfin Aff. Encl. A, ECF No. 28-3.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to the inmate's satisfaction, the inmate may submit an informal written complaint. Id. § I(D)(2). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident." Id. § II(B)(1)(d). Within two working days of receiving a written complaint, staff must log the complaint, print a grievance receipt, and provide the inmate with the receipt as notification of acceptance. Id. § II(B)(2). Following the logged receipt of a

written complaint, staff have 15 days to provide an appropriate response. Id. §§ I(D)(3), II(B)(4). If a staff member fails to provide a written response within 15 days or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4).

Regular grievances must be submitted within 30 days from the date of the incident or the discovery of the incident, absent injury, sickness, or some other circumstance beyond an inmate's control. Id. § III(B)(5). If a circumstance beyond the inmate's control prevents him from meeting the 30-day deadline, the inmate "has five days to file their grievance once the reason for delay is no longer valid." Id. The deadline for filing a regular grievance applies even if an inmate has not received a response to a written complaint. See Sutfin Aff. ¶ 7 ("Even if an inmate has not received a response to an Informal Complaint, the inmate must still submit the Regular Grievance within 30 days from the date of the incident or discovery of the incident.").

Following the submission of a regular grievance, the institutional ombudsman has two days to accept or reject it. OP 866.1 § I(D)(5). A timely regular grievance may be accepted even if the related written complaint was not filed within the applicable 15-day period. See id. § III(C)(3) ("*Regular Grievances* which include *Written Complaints* filed after the 15 days should be accepted for intake as long as the *Regular Grievance* is submitted within 30 days of the event or discovery."). If a regular grievance satisfies the intake criteria, staff must accept the grievance, log it into VACORIS, and issue a grievance receipt within two working days. Id. § III(C)(4). If the grievance does not meet the intake criteria, staff have two working days to return the grievance to the inmate with an explanation for its rejection. Id. § III(C)(5). The grievance form lists several reasons for which a grievance can be rejected at

intake, such as "Expired Filing Period." Sutfin Aff. Encl. B. If an inmate disagrees with an intake decision, the inmate may appeal the decision to the regional ombudsman within five days. OP 866.1 § III(C)(6).

When a regular grievance is accepted during the intake process, the warden or assistant warden is responsible for providing a Level I response within 30 days of the issuance of the grievance receipt. Id. § III(F)(1)–(2). If an inmate is dissatisfied with the response, the inmate may submit a grievance appeal to Level II within five days of receiving the Level I response. Id. § IV(B)(1)–(2). An inmate may also file an appeal if any time limit expires after a grievance has been submitted. Id. § (IV)(B)(3).

OPP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief. Id. § V(A). The exhaustion requirement is met when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." Id. § V(B).

## B.    Blakeney's Exhaustion Efforts

In support of the pending motion for summary judgment, the defendants submitted an affidavit from S. Sutfin, the institutional ombudsman for RNCC, along with relevant grievance records. On September 21, 2023, Blakeney signed a written complaint regarding an incident that purportedly occurred on August 26, 2023, at 11:00 p.m. Sutfin Decl. Encl. B. In particular, Blakeney alleged that he was placed "in a dry cell in medical for 23 days without a charge" on that date and that he was not allowed to shower or brush his teeth while confined in the dry cell. Id. Blakeney also alleged that his toilet was not flushed for ten days, causing him to inhale urine and feces, and that forcing him to eat meals under those

conditions constituted "cruel punishment." Id. The complaint was assigned to an investigator at RNCC, and on October 6, 2023, defendant Hickman provided the following response:

> You were transferred to RNCC after a suspected drug overdose at Nottoway Correctional Center. You were placed in medical for observation due to your previous actions at other institution. Intel staff did examine your feces, and flushed the toilet afterwards. There were days you told my staff you refused to have them look at your feces, and you were then advised that that is not an option.

Id.

On October 10, 2023, Blakeney signed a regular grievance containing the same allegations. Id. He identified the "Date/ Time of Incident" as "8.26.23" and alleged that the challenged conditions of confinement "started on 8.26.23." Id.

On October 18, 2023, Sutfin rejected the regular grievance as untimely. Id. Sutfin checked the box for "Expired Filing Period," which included the following explanation:

> You must submit your grievance within 30 [days] of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot.

Id. Blakeney appealed the intake decision to the regional ombudsman, and the regional ombudsman upheld the decision. Id.

In his verified complaint, Blakeney alleges that he "wasn't allowed to receive any grievances while in the dry cell," despite making "several requests to defendant Hickman to receive [an] 'informal complaint.'" Compl. ¶ 12. Blakeney further alleges that he "had to wait until he was released" from the dry cell to receive a complaint form and that he filed his

5

written complaint on September 21, 2023, after he had been released from the dry cell. <u>Id.</u> Blakeney argues that his untimely grievance "was the fault of Defendant Hickman," who would not allow him to have any complaint forms while he was in the dry cell, and, thus, that "his grievance procedures should have been allowed to start from the timing of his release [from the dry cell]." <u>Id.</u>

## II.    Standard of Review

Defendants Hickman and Williams have moved for summary judgment on the basis that Blakeney failed to properly exhaust his administrative remedies prior to filing suit. Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. <u>Id.</u> at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." <u>Matherly v. Andrews</u>, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

## III.    Discussion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

6

available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." Jones, 549 U.S. at 218. If "an administrative process is susceptible of multiple reasonable interpretations," the PLRA requires "that the inmate should err on the side of exhaustion." Ross v. Blake, 578 U.S. 632, 644 (2016).

The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Id. at 648.

7

(2016). "Available" means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." Id. at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense: (1) where the procedure "operates as a simple dead end," with correctional officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

**A.      Proper Exhaustion**

The court will first address whether the defendants have met their burden of establishing that Blakeney failed to exhaust his administrative remedies. As previously explained, the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90. Consequently, "an untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement. Id. at 83–84.

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Blakeney properly exhausted his administrative remedies. While Blakeney submitted a regular grievance related to his placement in a dry cell on August 26, 2023, and the conditions of confinement that he began enduring on that date, the grievance was rejected at intake on the basis that the filing period had expired. As previously noted, an inmate in the custody of the VDOC typically has "30 days from the original incident or discovery of the incident" to file a regular grievance. OP 866.1 § III(B)(5). Since Blakeney's regular grievance listed an incident date of August 26, 2023, but was not signed until October 10, 2023, the grievance was filed outside the 30-day deadline. Although an exception to the 30-day deadline applies when a delayed filing is beyond the inmate's control, an inmate only "has five days to file their grievance once the reason for delay is no longer valid." Id. Thus, even assuming that Blakeney had to wait until he was released from the dry cell on September 18, 2023,[2] to receive grievance forms, the grievance signed on October 10, 2023, was still untimely. And although Blakeney appealed the intake decision to the regional

---

[2] This date is derived from Blakeney's allegation that he was placed in the dry cell on August 26, 2023, and remained in the cell for 23 days.

ombudsman, "it is well settled that merely appealing an intake decision 'does not constitute valid exhaustion of remedies under OP 866.1.'" Bullock v. Hamby, No. 7:23-cv-00337, 2025 WL 2233680, at *5 (W.D. Va. Aug. 5, 2025), aff'd, No. 25-6708, 2026 WL 595469 (4th Cir. Mar. 3, 2026) (quoting Hailey v. Clary, No. 7:17-cv-00260, 2018 WL 2123623, at *2 (W.D. Va. May 8, 2018)). Instead, the exhaustion requirement is satisfied only when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(B).

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Blakeney properly exhausted his administrative remedies and that the defendants have met their burden of proving that he failed to do so.

**B.    Availability of Administrative Remedies**

Blakeney's verified complaint alternatively suggests that administrative remedies were unavailable to him because he could not "get any documents from [defendant Hickman or] any other prison official while in the dry cell at RNCC." Compl. ¶ 12 (emphasis added). However, "a grievance process is rendered 'unavailable' under the PLRA only if an inmate is actually prevented from using it." Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021). If "an inmate is able to participate in a grievance process, notwithstanding alleged obstacles, then that process remains 'available' for purposes of the PLRA." Id.

Here, Blakeney has not identified any obstacle that prevented him from filing a timely regular grievance. When Blakeney was released from the dry cell on September 18, 2023, he still had seven days to file a regular grievance by the 30-day deadline set forth in OP 866.1. Although Blakeney signed a written complaint during that seven-day period, he did not

10

submit a regular grievance until October 10, 2023, more than 20 days after he had been released from the dry cell. Because there is no evidence that anyone prevented Blakeney from filing a timely grievance after he was released from the dry cell, the statutory exception to the exhaustion requirement does not apply.

In sum, there is no evidence from which a reasonable factfinder could conclude that Blakeney properly exhausted his administrative remedies or that the grievance process set forth in OP 866.1 was "not capable of use" by Blakeney through no fault of his own. Ross, 578 U.S. 632, 642 (2016). Accordingly, the defendants are entitled to summary judgment on the exhaustion defense.

## IV.    Conclusion

For the reasons stated, the defendants' motion for summary judgment, ECF No. 27, is **GRANTED**. An appropriate order will be entered.

Entered: July 10, 2026

Michael F. Urbanski
U.S. District Judge
2026.07.10 16:42:55
-04'00'

Michael F. Urbanski
Senior United States District Judge

11